Maldovan v County of Erie (2020 NY Slip Op 06595)





Maldovan v County of Erie


2020 NY Slip Op 06595


Decided on November 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., CENTRA, NEMOYER, CURRAN, AND WINSLOW, JJ.


584 CA 19-01338

[*1]WILLIAM D. MALDOVAN, PUBLIC ADMINISTRATOR, AS ADMINISTRATOR OF THE ESTATE OF LAURA CUMMINGS, DECEASED, PLAINTIFF-RESPONDENT,
v
COUNTY OF ERIE AND TIMOTHY B. HOWARD, ERIE COUNTY SHERIFF, DEFENDANTS-APPELLANTS. (APPEAL NO. 1.) 






WALSH, ROBERTS & GRACE, BUFFALO (ROBERT P. GOODWIN OF COUNSEL), AND MICHAEL A. SIRAGUSA, COUNTY ATTORNEY, FOR DEFENDANTS-APPELLANTS. 
 


 Appeal from an order of the Supreme Court, Erie County (Diane Y. Devlin, J.), entered April 12, 2019. The order denied the motion of defendants for summary judgment. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs, the motion is granted, and the complaints are dismissed.
Memorandum: Plaintiff commenced actions, later consolidated, against defendants, County of Erie (County) and Timothy B. Howard, Erie County Sheriff (Sheriff), seeking, inter alia, to recover damages for the pain and suffering of plaintiff's decedent, and for her wrongful death, after she was killed by her mother, Eva Cummings. An investigation after decedent's death revealed that she had suffered from physical and sexual abuse by her half-brother, Luke Wright, and her mother in the months leading up to her death in January 2010. Both the mother and Wright were convicted of their crimes and sentenced to lengthy prison terms. As outlined in our prior appeal upon defendants' motions to dismiss the complaints (Mosey v County of Erie, 117 AD3d 1381, 1382-1383 [4th Dept 2014]), plaintiff asserted various negligence claims against the County based, among other things, on the investigations by child protective services (CPS) and adult protective services (APS) of complaints of possible abuse of decedent in her home in June 2009 and September 2009. Plaintiff asserted that the Sheriff was liable for, inter alia, negligently hiring, training, supervising, and retaining two deputies who found decedent in November 2009 after she ran away from her home and returned her to her home.
In appeal No. 1, defendants appeal from an order denying their motion for summary judgment dismissing the complaints and, in appeal No. 2, plaintiff appeals from an order denying his motion for summary judgment on the issue of liability.
We address first the County's contentions in appeal No. 1. We agree with the County that it is entitled to summary judgment dismissing the complaints against it on the ground that no special duty exists as a matter of law. When a negligence claim is asserted against a municipality, the court must first determine whether the municipality was engaged in a proprietary function or acted in a governmental capacity (see Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]; Preaster v City of Syracuse, 160 AD3d 1423, 1423 [4th Dept 2018], lv denied 32 NY3d 902 [2018]). Here, there is no dispute that the County, through the actions of CPS and APS, was acting in a governmental capacity (see Applewhite, 21 NY3d at 425). When a municipality acts in a governmental capacity, it is subject to tort liability only if it owed a special duty to the injured party (see id. at 426). Plaintiff asserts that a special relationship was formed [*2]based on the County's voluntary assumption of a duty to keep decedent safe, a duty on which decedent and others justifiably relied (see generally Coleson v City of New York, 24 NY3d 476, 481 [2014]; Applewhite, 21 NY3d at 426; Pelaez v Seide, 2 NY3d 186, 199-200 [2004]). To establish that special relationship, plaintiff must show "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking" (Cuffy v City of New York, 69 NY2d 255, 260 [1987]; see Applewhite, 21 NY3d at 430-431; Valdez v City of New York, 18 NY3d 69, 80 [2011]).
We agree with the County that it established as a matter of law that the fourth element, justifiable reliance, cannot be met in this case and that plaintiff failed to raise a triable issue of fact in opposition (see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). The justifiable reliance factor is " 'critical' because it 'provides the essential causative link between the "special duty" assumed by the municipality and the alleged injury' " (Valdez, 18 NY3d at 81, quoting Cuffy, 69 NY2d at 261; see Coleson, 24 NY3d at 481). Here, the evidence establishes that decedent's brother Richard Cummings, who was living out of state at the time, made complaints of possible abuse of decedent that were relayed to CPS in June 2009 and to APS in September 2009. Both agencies investigated the reports, determined that they were unfounded, and closed the investigations. Plaintiff contends that Cummings justifiably relied on the County to keep decedent safe, but we conclude that, inasmuch as he was aware that the agencies had closed their investigations, he could not have relied upon any " 'affirmative undertaking' " by them (Valdez, 18 NY3d at 80). "[A]t the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him [or her] either to relax his [or her] own vigilance or to forego other available avenues of protection" (Cuffy, 69 NY2d at 261). Here, Cummings did not in fact relax his own vigilance inasmuch as he made two follow-up calls to the APS caseworker asking her to reopen the investigation, and he was not induced to forego other avenues of relief (see Miles v Town/Village of E. Rochester, 138 AD3d 1465, 1466-1467 [4th Dept 2016]; Rivera v City of New York, 82 AD3d 647, 648 [1st Dept 2011]).
Alternatively, we agree with the County that it met its burden of establishing that it was entitled to governmental function immunity, and that plaintiff failed to raise a triable issue in opposition.
" '[A] public employee's discretionary acts—meaning conduct involving the exercise of reasoned judgment—may not result in the municipality's liability even when the conduct is negligent' " (Valdez, 18 NY3d at 76, quoting Lauer v City of New York, 95 NY2d 95, 99 [2000]; see Mon v City of New York, 78 NY2d 309, 313 [1991], rearg denied 78 NY2d 1124 [1991]). " 'Whether an action of a governmental employee or official is cloaked with any governmental immunity requires an analysis of the functions and duties of the actor's particular position and whether they inherently entail the exercise of some discretion and judgment. If these functions and duties are essentially clerical or routine, no immunity will attach' " (Valdez, 18 NY3d at 79). Stated differently, "discretionary . . . acts involve the exercise of reasoned judgment which could typically produce different acceptable results whereas a ministerial act envisions direct adherence to a governing rule or standard with a compulsory result" (Tango v Tulevech, 61 NY2d 34, 41 [1983]).
Defendants established that the actions of the CPS and APS caseworkers "resulted from discretionary decision-making" (Valdez, 18 NY3d at 79-80; see Hines v City of New York, 142 AD3d 586, 586-587 [2d Dept 2016]; Rivera, 82 AD3d at 648; Weitzner v New York City Dept. of Social Servs., 212 AD2d 414, 415 [1st Dept 1995]). While the caseworkers may have been negligent, they were exercising their discretion throughout the investigations (see Weitzner, 212 AD2d at 415). Moreover, we agree with the County that a cause of action for negligent investigation is not recognized in New York, which provides an additional reason for dismissal of the claims against the County to the extent the claims make those allegations (see Juerss v Millbrook Cent. Sch. Dist., 161 AD3d 967, 968 [2d Dept 2018], lv denied 32 NY3d 903 [2018]; Hines, 142 AD3d at 587; Santiago v City of Rochester, 19 AD3d 1061, 1062 [4th Dept 2005], lv denied 5 NY3d 710 [2005]).
Addressing the Sheriff's contentions in appeal No. 1, we agree with the Sheriff that he is entitled to summary judgment dismissing the complaint against him. The essence of plaintiff's claims against the Sheriff is that his alleged negligence in training the deputies resulted in their failure to conduct an adequate investigation. However, " 'a claim for negligent training in investigative procedures is akin to a claim for negligent investigation or prosecution, which is not actionable in New York' " (Juerss, 161 AD3d at 968-969). Further, inasmuch as the allegations of negligent hiring, training, and supervision against the Sheriff all involved conduct requiring the exercise of the Sheriff's discretion and judgment, the Sheriff established his entitlement to the governmental function immunity defense (see Mon, 78 NY2d at 314-315), and plaintiff failed to raise a triable issue of fact in opposition. The Sheriff also established as a matter of law that his alleged negligence was not a proximate cause of decedent's death two months later, and plaintiff failed to raise a triable issue of fact in opposition (see generally Mazella v Beals, 27 NY3d 694, 706 [2016]).
In light of our determination, we do not address defendants' remaining contentions in appeal No. 1. In addition, based on our determination in appeal No. 1, we conclude in appeal No. 2 that Supreme Court properly denied plaintiff's motion for summary judgment.
Entered: November 13, 2020
Mark W. Bennett
Clerk of the Court